IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JAMES R. SATTERFIELD,          )
                               )
                Plaintiff,     )
                               )
v.                             )     Case No. CIV-17-423-RAW-KEW
                               )
COMMISSIONER OF SOCIAL         )
SECURITY ADMINISTRATION,       )
                               )
                Defendant.     )

## REPORT AND RECOMMENDATION

Plaintiff James R. Satterfield (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 50 years old at the time of the ALJ's latest decision.  Claimant completed his high school education.  Claimant has worked in the past as a repairman and assembly line worker. Claimant alleges an inability to work beginning December 10, 2010 due to limitations resulting from scoliosis, degenerative disc disease, anxiety disorder, depression, osteoarthritis, hypertension, and a hand disorder.

3

## Procedural History

On June 13, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. §1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On January 23, 2013, Administrative Law Judge ("ALJ") Bernard Porter conducted an administrative hearing in Poteau, Oklahoma. On March 15, 2013, the ALJ issued an unfavorable decision. On May 2, 2014, the Appeals Council denied review. The ALJ's decision, however, was reversed and the case was remanded to the Commissioner for further proceedings by Order of this Court on September 29, 2015.

On remand, ALJ Christopher Hunt conducted a further administrative hearing on June 1, 2017. He entered another unfavorable decision on August 21, 2017. Claimant appealed the ALJ's decision directly. 20 C.F.R. §§ 404.984, 416.1484.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform his past relevant work. He also determined Claimant could perform light work.

4

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly assess his credibility as to pain; (2) failing to properly evaluate the opinion of Dr. Theresa Horton; and (3) failing to include all of his limitations in the RFC.

## Credibility Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of scoliosis, degenerative disease of the cervical and lumbar spine, anxiety with panic disorder, major depressive disorder, and history of insomnia. (Tr. 418). The ALJ concluded Claimant retained the RFC to perform light work. In so doing, he found Claimant could lift/carry 20 pounds occasionally and ten pounds frequently; could sit, stand, and walk for six hours in an eight hour workday; could not climb ladders, ropes, or scaffolding; could occasionally climb ramps, stairs, and stoop, kneel, crouch, or crawl with only occasional reaching or working overhead. Claimant was limited to simple, repetitive, and routine tasks with only occasional contact with co-workers and supervisors and cursory and superficial contact with the general public, working with things rather than people. (Tr. 419-20).

After consultation with a vocational expert, the ALJ found Claimant could perform his past relevant work as an assembler. (Tr.

428).  He also determined Claimant could perform the representative jobs of garment sorter, cutting machine operator, and hand packager, all of which were found to exist in sufficient numbers in the national and regional economies. (Tr. 428-29).  As a result, the ALJ found Claimant was not under a disability from December 10, 2010 through the date of the decision.  (Tr. 429).

Claimant contends the ALJ failed to properly assess his credibility as to the pain he experiences.  Claimant testified he lives with his parents.  He cooks a little bit and sweeps floors. Half of his days in the week are "good days" and half are "bad days."  (Tr. 441).  If he overexerts himself, he will not be able to do much.  A "good day" also occurs when his mind is not racing, not being depressed, not hurting as bad, not thinking about little things that don't matter, getting a good night's sleep.  On "bad days", Claimant stays in his room, laying down except to use the bathroom, get a drink and eat, staying secluded.  (Tr. 442).

On "bad days", Claimant finds it hard to get around because his ankles and knees swell up.  If he bends over, his back hurts.  He gets "real bad headaches" because of his neck.  The headaches put him in his room with the lights out.  He cannot concentrate and cannot sleep.  He cannot sit and watch a movie as he gets real nervous and anxious.  Depression will kick in for no reason at all and he will start to cry.  (Tr. 443).  He leaves the house to go to

6

the doctor and sometimes grocery shop once a month with his mother. He goes into the store but gets really nervous with there is a bunch of people around. In that event, he will go back and sit in the car. (Tr. 444).

Claimant keeps in touch with a couple of friends through Facebook. He communicates them once or twice a week on the "good days." He does not date. (Tr. 445). His depression and anxiety worsened so that he could no longer work five or six years prior to the hearing but before December of 2013. He was being treated by Dr. Wellman, a general practitioner. Claimant went to his doctor about once a month. Dr. Wellman gave him blood pressure medication and exercises to do to keep his back stretched. (Tr. 447). He also gave Claimant a topical medication called Sombra to rub on his back. The prescription medication he was given was morphine and methadone and Xanax for anxiety. (Tr. 448).

After he quit seeing Dr. Wellman, Claimant obtained his medication from the clinic in Poteau, Oklahoma and began seeing Dr. Willis for physical problems and Dr. Broadway for psychological problems. (Tr. 449). When Claimant has anxiety attacks, he can hardly breathe, he doesn't know where he is at, he wants to be by himself, and he starts sweating and experiences a racing heartbeat. He has attacks at least once or twice a month. (Tr. 452). He confirmed the accuracy of his report to Dr. Theresa Horton. Id.

Claimant had shoulder pain and knee pain. (Tr. 453). He was not referred to an orthopedic doctor but rather was only treated with medication by Dr. Wellman. (Tr. 454). He also had a TENS unit that helped his back. He uses it three to four times a week with some relief. (Tr. 455). He testified that he fractured his neck at C4-5 when he was younger which causes headaches. (Tr. 456).

The ALJ found Claimant's pain testimony was not entirely consistent with the medical evidence. As an example, the ALJ states Claimant's complaints ov chronic pain were inconsistent with the treatment record, which revealed only distant past chiropractic care and pain medication as treatment modalities. The Wellness Clinic records from Roland, Oklahoma showed physical examinations which were largely unchanged yet narcotic medications prescriptions continued. The ALJ also found consultative examinations indicated negative straight leg raising bilaterally, a safe and stable gait with appropriate speed, no identifiable muscle atrophy, and normal heel/toe walking and tandem gait. This cast doubt on Claimant's claim of continuing pain and tenderness. The ALJ then concluded Claimant's statements on his ability to work would only be accepted to the extent they are consistent with the objective medical record. (Tr. 420-21).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not

8

just a conclusion in the guise of findings." <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. <u>Id</u>. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form

specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.

### Evaluation of the Opinion Evidence

Claimant also challenges the evaluation of the opinion of Dr. Theresa Horton, who conducted a consultative mental status examination on January 31, 2012. After evaluating Claimant, Dr. Horton diagnosed Claimant with Generalized Anxiety Disorder, Panic Disorder, Dysthymia, early onset, Major Depressive Disorder, recurrent, moderate to severe. (Tr. 353). She concluded Claimant appeared capable of understanding and remembering simple and complex instructions and tasks, although his pace was so very slow that he likely would have management problems, particularly with those tasks which were more complex. Claimant's concentration was found to be poor and likely would interfere with productivity. Claimant appeared capable of adequate social and emotional adjustment into most occupational and social settings at that time. Id.

The ALJ found Dr. Horton's opinion that Claimant could understand and remember some complex instructions to be inconsistent with the record. He limited Claimant to simple, repetitive and routine tasks due to his pain and unskilled work history. But he also concluded that little evidence supported Dr.

Horton's opinion about limited pace, poor concentration, and inadequate social and emotional adjustment.  The ALJ found the findings inconsistent with that of Dr. Eric Boardway who treated Claimant for his mental health problems of anxiety and mood swings with medication alone, indicating Claimant's complaints were not as severe as alleged.  (Tr. 426-27).

The ALJ then gave significant weight to the opinion of Dr. Carolyn Goodrich, a non-examining mental health professional. Dr. Goodrich determined Claimant had moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace with no episodes of decompensation.  (Tr. 364). Dr. Goodrich also found Claimant was markedly limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public.  (Tr. 369).  She concluded Claimant was capable of simple work.  (Tr. 366).

The ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must also explain in the decision the weight given to the medical opinions.  Soc. Sec. R. 96-6p, 1996 WL 374180.  An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of

11

nondisability." <u>Haga v. Astrue</u>, 482 F.3d 1205, 1208 (10th Cir. 2007). Essentially, the ALJ made the same findings with regard to the analysis of Dr. Horton's opinion and Dr. Goodrich's opinion as was made by the first ALJ before remand. Without repeating the prior order which reversed the decision, this Court refers the Commissioner to the transcript. (Tr. 476-78). On remand, the appropriate analysis shall be accomplished.

## RFC Determination

Claimant also lists several limitations which he alleges should have been included in the RFC. The origin of these restrictions is a source statement provided by Dr. William Willis on November 14, 2016. The ALJ did not give the opinion "controlling weight" because the findings did not allegedly coincide with the treatment records. Also, the findings were inconsistent with Claimant's activities. (Tr. 426). Claimant did not challenge the evaluation of Dr. Willis' opinion but rather only advocated for the inclusion of the restrictions contained in his source statement. Since the ALJ's assessment stands uncontested, it would be inconsistent to then adopt the restrictions found by Dr. Willis in the RFC.

## Conclusion

The decision of the Commissioner is not supported by

substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 8th day of March, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE